**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**RACHEL JENKINS,**

                **Plaintiff,**        **07 Civ. 6322 (JGK)**
                                 **07 Civ. 11317 (JGK)**

      **- against -**

                                 **AMENDED MEMORANDUM**
**NEW YORK STATE BANKING DEPARTMENT,**     **OPINION AND ORDER**

                **Defendant.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

The plaintiff, Rachel Jenkins ("Jenkins"), brings these actions against the New York State Banking Department ("Department"). The plaintiff, a 52 year-old African-American woman, alleges that the defendant discriminated against her on the basis of her race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). The plaintiff further alleges that the defendant discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA"), and on the basis of her Christian religion. Additionally, the plaintiff alleges that the defendant retaliated against her after she filed her first complaint with the Department of Human Resources, and failed to promote her at any time during her

employment.  The defendant moves for summary judgment pursuant
to Federal Rule of Civil Procedure 56.

I

The standard for granting summary judgment is well
established.  This Court may not grant summary judgment unless
"the pleadings, the discovery and disclosure materials on file,
and any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c)(2); see also Matican v.
City of New York, 524 F.3d 151, 154 (2d Cir. 2008); Bouboulis v.
Transport Workers Union of America, 442 F.3d 55, 59 (2d Cir.
2006).  "[T]he trial court's task at the summary judgment motion
stage of the litigation is carefully limited to discerning
whether there are any genuine issues of material fact to be
tried, not in deciding them."  Gallo v. Prudential Residential
Servs. Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994).  The substantive
law governing the case will identify only those facts that are
material and "[o]nly disputes over facts that might affect the
outcome of the suit under the governing law will properly
preclude the entry of summary judgment."  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986); see also Carvel v.
Franchise Stores Realty Corp., No. 08 Civ. 8938, 2009 WL
4333652, at *12 (S.D.N.Y. Dec. 1, 2009).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The nonmoving party must produce evidence in the record and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motions are not credible."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Carvel, 2009 WL 4333652, at *12.

Where as here, a pro se litigant is involved, although the same standards for dismissal apply, the Court must give a pro se litigant special latitude in responding to summary judgment motion.  See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)(courts "read the pleadings of a pro se plaintiff liberally

and interpret them 'to raise the strongest possible arguments that they suggest'")(quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)); <u>Vitrano v. State Farm Ins. Co.</u>, No. 08 Civ. 00103, 2008 WL 2696156 at *1 (S.D.N.Y. Oct. 18, 2008). In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment.  See <u>McPherson</u>, 174 F.3d at 281; <u>Vital v. Interfaith Med. Ctr.</u>, 168 F.3d 615, 620-21 (2d Cir. 1998); <u>see also</u> <u>Ford v. Choice Personnel, Inc.</u>, No. 06 Civ. 7200, 2009 WL 35032, at *2 (S.D.N.Y. Jan. 6, 2009).

In this case, as required by Local Rule 56.2, the defendant provided the plaintiff with a "Notice to Pro Se Litigant" dated March 24, 2009 as required by Local Rule 56.2 which sets out the responsibilities of the pro se plaintiff in responding to a motion for summary judgment. The Notice advised the plaintiff of the procedures for responding to a motion for summary judgment, including the requirement that the plaintiff submit a response to the defendants' statement pursuant to this District's Local Rule 56.1 and to submit counter-evidence.  The plaintiff demonstrated her understanding of the summary judgment procedure by submitting an affidavit and evidence in response to the motion.[1]

---

[1] The original of the Rule 56.2 Motion filed with the Court indicates that a copy of Rule 56 is attached, but no such copy is attached.  Even if the Rule

II

The following facts are taken from the evidence submitted to the Court and are construed in the light most favorable to the plaintiff.  All facts are undisputed unless otherwise noted.

The plaintiff is an African-American female; she was born on June 23, 1957 and is currently 52 years of age.  (Defs.' 56.1 Stmt. ¶ 2.)  The defendant has employed the plaintiff since 1980.  (Defs.' 56.1 Stmt. ¶ 1.)  The plaintiff is employed as a Clerk 1, Grade 6 and is now assigned to the Mortgage Banking Division, although she previously worked in the Office Services Division.  (Defs.' 56.1 Stmt. ¶ 47, 48; Rulon Aff. ¶ 5, Jan. 26, 2006.)  The plaintiff's job responsibilities include, among other things, processing transactions and monitoring records in a variety of organization settings. (Rulon Aff. ¶ 5, Jan. 26, 2006.)  Tae Ibraheem, Principal Account Clerk, is the plaintiff's direct supervisor.  (Defs.' 56.1 Stmt. ¶ 28; Rulon Aff. ¶ 5, Jan. 26, 2006.)

The plaintiff has received three Notices of Discipline (NOD).  (Defs.' 56.1 Stmt. ¶ 40; Jenkins Dep. 66; Rulon Aff. ¶

---

was not attached to the copy served on the plaintiff, the omission did not prejudice the plaintiff because she was advised of the substance of the Rule and did present evidence in response to the motion.  See Saunders v. New Horizons Computer Learning Center of Metropolitan New York, No. 99 Civ. 9532, 2002 WL 1067823, at *2 n.1 (S.D.N.Y. May 29, 2002) (noting that even failure to comply with the notice requirement was not prejudicial where the plaintiff had a sufficient understanding of Rule 56).
    The plaintiff did not present a counter-statement in response to the defendant's Rule 56.1 Statement.  In any event, there is evidentiary support for any statements referred to in the Rule 56.1 Statement.

6, Jan. 26, 2006.)  The plaintiff was served with an NOD dated
February 3, 2005 based on a series of nine incidents of
misconduct and insubordination.  (Rulon Aff. ¶ 6 & Ex. A, Jan.
26, 2006.)  A number of the plaintiff's offenses involve her
failure to appear for scheduled meetings with her supervisors
despite being advised verbally and in writing that the
plaintiff's attendance was mandatory and that refusing to appear
would constitute insubordination.  (Rulon Aff. Ex. A, Jan. 26,
2006.)  The plaintiff was also found to have left work in the
middle of the day to take unauthorized breaks in violation of a
staff memorandum and to have left work early to deliver
certified mail to the postal unit in violation of direct orders
from her supervisor and a staff memorandum.  (Ibraheem Aff. ¶¶
21-22.) Additionally, the plaintiff was found to have refused to
comply with direct orders from her supervisor, Mr. Ibraheem, to
complete specific tasks throughout her work day.

     The second NOD, dated June 28, 2005, was issued for two
unauthorized absences.  (Defs.' 56.1 Stmt. ¶ 33; Rulon Aff. Ex.
B, Jan. 26, 2006.)  In the first occurrence, the plaintiff left
work at a time earlier than the time she was authorized to
leave, despite being told by her supervisor that she was not
allowed to leave early.  (Rulon Aff. ¶ 7 & Ex. B, Jan. 26,
2006.)  The second unauthorized absence occurred on Apr. 7, 2005
when the plaintiff was absent from work without calling and

without authorization.  (Rulon Aff. Ex. B, Jan. 26, 2006.)
While the plaintiff requested the day off as a vacation day, her
supervisor, Mr. Ibraheem, denied the request, and the plaintiff
was notified in writing.  (Defs.' 56.1 Stmt. ¶ 29; Jenkins Dep.
18 & Ex.B.)  The plaintiff argues that her supervisor should
have given her a verbal denial of her request and that returning
her request slip to her with a written denial was not sufficient
because he should not have assumed that she would read the slip.
(Jenkins Dep. 147-48.)  The plaintiff argues that "somebody
should have said something" to bring the denial to her
attention, it was not her responsibility to read the slip
because she was busy.  (Jenkins Dep. 151-52.)  However, the
plaintiff had the request slip that had been marked denied in
her desk for a week and could have looked to see if her request
had been checked approved or denied at any time.

    The plaintiff grieved her NOD dated June 28, 2005.  She
appeared in front of a time and attendance umpire at a hearing
on September 19, 2005, represented by a Civil Service Employees
Association ("CSEA") Representative, Barbara Moore.  (Rulon Aff.
¶ 7, Jan. 26, 2006.)  On September 22, 2005, the time and
attendance umpire imposed a fine of $150.00, to be taken out of
her pay in $50.00 increments.  (Defs.' 56.1 Stmt. ¶ 34; Jenkins
Dep. Ex. O).  The plaintiff alleges that her pay was docked

based on her age, but she proffers no evidence in support of the allegation.[2]  (Defs.' 56.1 Stmt. ¶ 24; Jenkins Dep. 17-18.)

The plaintiff's final NOD resulted from an incident of insubordination on October 12, 2005.  (Defs.' 56.1 Stmt. ¶¶ 35-40; Jenkins Dep. Ex. G.)  The statement of charges includes four specifications that the plaintiff claims are untrue.  (Jenkins Dep. 63, 81.)  According to the defendant, the incident began when the plaintiff refused to give her coworker and acting supervisor, Ileana Jardines, a registered letter in her possession.  (Rulon Aff. ¶¶ 8-9, Jan. 26, 2006.)  Ms. Jardines reported the incident to Human Resources and Diana Rulon, Chief Administrative Officer, who then accompanied Ms. Jardines to the plaintiff's workstation to speak with the plaintiff.  (Rulon Aff. ¶ 10, Jan. 26, 2006.)  Ms. Rulon repeatedly directed the plaintiff to give the letter to Ms. Jardines, and when the plaintiff finally complied, she ripped up the registered mail receipt and told Ms. Jardines to write out a new receipt herself.  (Rulon Aff. ¶ 10, Jan. 26, 2006.)

---

[2] The plaintiff's first complaint alleges that she was discriminated against on the basis of her age, gender, and religion.  (Compl. ¶ 7).  In the plaintiff's second complaint, she alleges that she was discriminated against on the basis of her age, race, and gender.  (Compl. ¶ 2(D).  However, the plaintiff proffers no evidence to support any of these allegations and appears to be unclear as to which motivation corresponds with the defendants' allegedly discriminatory actions.  Throughout her deposition, the plaintiff appears to shift between each discriminatory motivation at will, offering age discrimination for some behavior, religious discrimination for other behavior, and so on.  In any event, the plaintiff offers nothing more than conclusory statements to support any discriminatory allegation and fails to point to any direct evidence of discrimination, or even any circumstantial evidence of discrimination.

Ms. Rulon then asked the plaintiff to prepare a new registered mail receipt or she would lose her job, although the plaintiff's claim denies this. (Rulon Aff. ¶ 11, Jan. 26, 2006; Jenkins Dep. 65.) The plaintiff continued to refuse to fill out the form and, when Ms. Rulon said that the plaintiff would lose her job, the plaintiff responded, "then she'd lose it." (Rulon Aff. ¶ 11, Jan. 26, 2006.) After the plaintiff refused to fill out the form, Ms. Rulon took the letter, and states that the plaintiff mocked her and Ms. Jardines as they walked away. (Rulon Aff. ¶ 11, Jan. 26, 2006.) The plaintiff concedes that she did not fill out a slip for Ms. Jardines, even after being asked by Ms. Rulon. (Jenkins Dep. 77.) However, the plaintiff contends that she did not "refuse" to do what Ms. Rulon told her to do, only that she "didn't do it," but she fails to provide any distinction between the two. (Jenkins Dep. 77-79.)

The plaintiff was served with a statement of charges that included the above conduct. The final specification in the statement of charges indicates that Ms. Rulon asked the plaintiff what tasks she was working on and plaintiff refused to respond. (Jenkins Dep. Ex. G.) The plaintiff received this statement of charges after the incident along with the proposed penalty that she be terminated. (Defs.' 56.1 Stmt. ¶ 40; Jenkins Dep. 71.)

Following this incident, the plaintiff was placed on administrative leave. (Defs.' 56.1 Stmt. ¶ 39.) The plaintiff was told to surrender her department ID and not to appear at work or contact anyone except Human Resources. (Jenkins Dep. 71.) The plaintiff was directed to call Human Resources every day at ten and two for further instructions. (Jenkins Dep. 72.) The conditions of the plaintiff's administrative leave were memorialized in a letter dated October 12, 2005 that the plaintiff received. (Defs.' 56.1 Stmt. ¶ 39; Jenkins Dep. Ex. I.) The defendant contends that the plaintiff refused to sign a copy of the letter, but the plaintiff alleges she was never asked to sign the letter. (Jenkins Dep. 72 & Ex. I.) The plaintiff further contends that she was not given an explanation for why she was placed on administrative leave and that this was another incident of discrimination. (Defs.' 56.1 Stmt. ¶ 6.) However, the administrative leave commenced immediately after the plaintiff's act of insubordination regarding her refusal to relinquish the certified mail and subsequent ripping of the certified mail receipt. (Jenkins Dep. 87-88.) The plaintiff returned from administrative leave on May 15, 2006 and was assigned to the Mortgage Banking Division. (Defs.' 56.1 Stmt. ¶ 47.)

The plaintiff contested the third NOD in a grievance proceeding where she was represented by CSEA Representative Paul

Levine.  (Jenkins Dep. Ex. H.)  On or about June 19, 2007, the parties entered into a voluntary settlement agreement of the charges stemming from the October 12, 2005 occurrence.  (Jenkins Dep. Ex. H.)

The conditions of her settlement were as follows: (1) the plaintiff was suspended without pay for a period of five days; (2) the plaintiff forfeited fifteen days of annual leave accruals; and (3) the plaintiff received a twenty-day disciplinary suspension without pay held on abeyance for a period of eighteen months from the date of the settlement. (Jenkins Dep. Ex. H.)  If the plaintiff was charged with an act of misconduct involving insubordination within the eighteen month time period, the penalty held in abeyance would be imposed.  (Jenkins Dep. Ex. H.)  If no such act was charged within that time period, the abeyance would be forgiven. (Defs.' 56.1 Stmt. ¶ 42; Jenkins Dep. Ex. H.)  The plaintiff now contends that she signed this settlement agreement under duress. (Jenkins Dep. 69-70.)

On November 22, 2005, the plaintiff filed a charge with the New York State Division of Human Rights ("NYSDHR") alleging that she was discriminated against because of her age.  (Jenkins Dep. Ex. C.)  She complained about her October 12, 2005 administrative leave and claimed that she was systematically forced out of her employment.  (Jenkins Dep. Ex. C.)  She

amended that complaint to add her complaint about having been docked $150.00 from her salary. She filed another amended complaint on March 9, 2006 alleging that the discrimination was based on age, sex, and race. (Defs.' 56.1 Stmt. ¶¶ 3, 8; Jenkins Dep. Exs. C & D.)  However, in this complaint the plaintiff pointed to the same events alleged to be acts of discrimination in the initial complaint, namely the October 12, 2005 administrative leave and the $150.00 pay dock, without providing any evidence of how these acts constituted acts of discrimination on the basis of age, sex, or race. (Jenkins Dep. Ex. D.)

On January 31, 2007, the NYSDHR dismissed the plaintiff's complaint because its investigation of the plaintiff's allegations did not substantiate a causal nexus between the defendant's actions and the bases of the plaintiff's allegations. (Defs.' 56.1 Stmt. ¶ 10; Jenkins Dep. Ex. E.)  On February 27, 2007, the EEOC accepted the findings of the NYSDHR and issued the plaintiff a Notice of Right to Sue. (Jenkins Dep. Ex. F.)  The plaintiff filed a second charge with the EEOC alleging discrimination based on age, race, sex, and retaliation on March 7, 2006. (Defs.' 56.1 Stmt. ¶ 11; Jenkins Dep. Ex. N1.)  The EEOC dismissed this second charge, as well, granting the plaintiff a Notice of Right to Sue. (Defs.' 56.1 Stmt. ¶ 17; Jenkins Dep. Ex. N3.)

The plaintiff also alleges that the Department has failed to promote her to a higher level than Clerk 1 Grade 6 and this constitutes discrimination.  (Compl. § 2(A).)  The plaintiff has thus far been unable to pass an exam required to qualify for a promotion.  (Jenkins Dep. 115-16.)   The plaintiff has conceded that she has never applied for a promotion, but alleges that her supervisor could have offered her a promotion.  (Jenkins Dep. 123.) However, when the plaintiff indicated to her office manager, Walter Dillon, that she wanted a promotion, he indicated that in order to qualify she would need to pass a test.  (Jenkins Dep. 119-20.)  The plaintiff alleges that her failure to pass the test is just an excuse, and that her supervisors could upgrade her past Grade 6 if they wished. (Jenkins Dep. 123.)

III

As a pro se pleading, the plaintiff's complaints are construed liberally.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); See also Grant v. Pathmark Stores, Inc., No. 06 Civ. 5755, 2009 WL 2263795, at *5 (S.D.N.Y. 2009).  The plaintiff alleges that the defendant discriminated against her based on her age, race, gender, and religion when money was deducted from her paycheck.  (See Compl. 2(E).)  The plaintiff also alleges that she was discriminated against on the basis of her age, race, and gender when she was placed on administrative leave.

(See Compl. ¶ 2(E).)  Additionally, the plaintiff alleges that
she was discriminated against with unequal terms and conditions
of her employment based on her age, race, gender, and religion.
(See Compl. ¶ 2(E).)

A.

1.

The ADEA makes it unlawful for an "employer" "to discharge
any individual or otherwise discriminate against any individual
with respect to his compensation, terms, conditions, or
privileges of employment," who is at least forty years of age
"because of such individual's age."  29 U.S.C. §§ 623(a),
631(a).  Title VII of the Civil Rights Act makes it "an unlawful
practice for an employer to discriminate against any individual
with respect to his compensation, terms, conditions or
privileges of employment, because of such individual's race,
color, religion, sex, or national origin."  42 U.S.C. § 2000e-
2(a).  Similarly, the State and City statutes prohibit
discrimination on the basis of age, national origin, gender,
race, color, or religion. See New York State Human Rights Law,
N.Y. Exec. Law § 296(1)(a); New York City Human Rights Law,
N.Y.C. Admin. Code § 8-107(1)(a).

The plaintiff's claims of discrimination on the basis of
age, race, gender, and religion brought pursuant to Title VII,
ADEA, and the New York State and City Human Rights Laws, are

14

evaluated at the summary judgment stage by the burden-shifting analysis that governs Title VII, established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See, e.g., Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir. 2005) (noting burden-shifting Title VII analysis also applies to discrimination claims under the NYSHRL and NYCHRL); see also Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd., No. 06 Civ. 5474, 2008 WL 857492, at *5 (S.D.N.Y. Mar. 31, 2008).

To establish a prima facie case of discrimination under Title VII and the ADEA, a plaintiff must demonstrate: (1) that she is a member of a protected class; (2) that her performance was satisfactory; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See McDonnell Douglas, 411 U.S. at 802; see also James v. New York Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000); Deluca, 2008 WL 857492, at *5. If the plaintiff meets the minimal burden of establishing a prima facie case, the burden of production then shifts to the defendant to offer a legitimate, nondiscriminatory rationale for the adverse employment action. See McDonnell Douglas, 411 U.S. at 802-03; James, 233 F.3d at 154; see also Deluca, 2008 WL 857492, at *5.

If the defendant articulates a legitimate reason for the action, the presumption of discrimination raised by the prima

facie case drops out, and the plaintiff has the opportunity to
demonstrate that the proffered reason was not the true reason
for the employment decision and that the plaintiff's membership
in a protected class was.  See Texas Dep't Cmty. Affairs v.
Burdine, 450 U.S. 248, 254-56 (1981); Deluca, 2008 WL 857492, at
*5.

　　　The Court of Appeals for the Second Circuit has instructed
that in determining whether the plaintiff has met this burden, a
court is to use a "case by case" approach that evaluates "the
strength of the plaintiff's prima facie case, the probative
value of the proof that the employer's explanation is false, and
any other evidence that supports [or undermines] the employer's
case."  James, 233 F.3d at 156 (quoting Reeves v. Sanderson
Plumbing Co., 530 U.S. 133, 148-49 (2000)); see also Deluca,
2008 WL 857492, at *5.  Although summary judgment must be
granted with caution in employment discrimination actions,
"where intent is genuinely at issue, summary judgment remains
available to reject discrimination claims in cases lacking
genuine issues of material fact."  Chambers v. TRM Copy Ctrs.
Corp., 43 F.3d 29, 40 (2d Cir. 1994)(citation omitted); see also
Deluca, 2008 WL 857492, at *5.

　　　The plaintiff carries the initial burden under the
McDonnell Douglas framework of making out a prima facie case of
discrimination.  The plaintiff alleges that she was the victim

16

of discrimination when her pay was docked $150.00, she was placed on administrative leave, and she was charged with misconduct and threatened with termination.  As to each event, she has failed to present evidence that the event occurred under circumstances giving rise to an inference of discrimination.  In any event, as to each event, the defendant has presented a non-discriminatory reason for its action and the plaintiff has failed to carry the burden of showing that the defendant's actions were in fact caused by discrimination.

The plaintiff alleges that she was discriminated against on the basis of her age, race, gender, and religion when her pay was docked $150.00, taken out of three paychecks in $50.00 increments.  However, the defendant identifies two unauthorized absence occurrences prior to the plaintiff's fine, one when the plaintiff left work early, and another when the plaintiff did not come to work after her request for a day off was denied.  The plaintiff appeared in front of an Umpire Panel to contest this NOD and was represented by her union representative.  The $150.00 fine was not imposed until after the matter was adjudicated.  (See Jenkins Dep. Def. Ex. O.)

The plaintiff also alleges that her administrative leave beginning on October 12, 2005 was a result of discrimination based on her age, gender, and race.  (See Compl. ¶ 2(D).)  The plaintiff claims that she was not given a reason as to why she

17

was placed on administrative leave.  (<u>See</u> Compl. ¶ 2(E).)

However, the plaintiff was placed on that leave the same day (in

fact, about 30 minutes after) she had refused to follow an order

given to her by the Chief Administrative Officer to give the

certified mail to a co-worker and after she ripped up the

receipt accompanying the mail.  (<u>See</u> Jenkins Dep. Ex. G.)

Although the plaintiff claims that the Chief Administrative

Officer "doesn't like her," she cannot point to any evidence to

indicate that this is true, or to prove that any dislike is

based on the plaintiff's age, gender, or race.  (<u>See</u> Jenkins

Dep. 180.)

     The plaintiff further alleges that she was given three

NODs, the final one seeking her termination, as a result of

discrimination based on age, race, gender, and religion.

(Compl. ¶ 2(A).)  The plaintiff received her first NOD after a

series of incidents of misconduct and insubordination. (<u>See</u>

Rulon Aff. ¶ 6 & Ex. A, Jan. 26, 2006.)  Examples of some of

these incidents include the plaintiff's failure to comply with a

direct order to remain in the Director of Human Resources'

office to attend a counseling session, the plaintiff's flagrant

disregard of an order from her supervisor not to leave the

building with the Certified Mail, the plaintiff's refusal to

follow her supervisor's orders to complete specific tasks, and

numerous refusals to meet with supervisors to discuss these kind

of incidents.  (See Rulon Aff. Ex. A, Jan. 26, 2006.)  There is
no evidence that the incidents giving rise to the NOD occurred
for any reason other than the plaintiff's own misconduct, and
the plaintiff has failed to show that the reasons given by the
defendant were merely pre-textual.

The second NOD, dated June 28, 2005, was a result of two
unauthorized absences. (See Rulon Aff. ¶ 7, Jan. 26, 2006.)  The
first unauthorized absence occurred when the plaintiff left work
early, directly violating an order from her supervisor that she
was not allowed to leave early.  (Rulon Aff. ¶ 7, Jan. 26,
2006.)  The second unauthorized absence occurred when the
supervisor denied the plaintiff's request for a day off in
writing, yet she still chose not to come to work that day.
(Rulon Aff. ¶ 7, Jan. 26, 2006.)

The plaintiff fails to point to any evidence of any
discriminatory basis for why she was denied a day off other than
to say that management "wanted to get rid of [her]." (See
Jenkins Dep. 152.)  The defendant, on the other hand, offers a
legitimate, nondiscriminatory reason why the plaintiff's request
for a day off was denied; a meeting had already been scheduled
for that date with the plaintiff and the defendant's Human
Resources Division to discuss a prior disciplinary matter.  (See
Rulon Aff. ¶ 7, Jan. 26, 2006.)

After being placed on administrative leave as a result of
the October 12, 2005 incident, the plaintiff received her third
NOD, this time, seeking her termination.  (Rulon Aff. ¶ 13, Jan.
26, 2006.)  Although the plaintiff was placed on administrative
leave as a direct result of her insubordination, she alleges
that it was based on her race because the people that gave her
the NOD are Caucasian.  (See Jenkins Dep. 177, 248.)  However,
the plaintiff offers no evidence of a causal connection to race,
and her conclusory statements are not enough to overcome the
defendant's non-discriminatory explanation that the
administrative leave and subsequent NOD seeking termination
resulted from the plaintiff's failure to comply with a direct
order from the Chief Administrative Officer.

In any event, the plaintiff cannot complain about an
alleged termination because she was not terminated.
Furthermore, she cannot complain about the settlement agreement
she entered into with the defendant because there is no evidence
that it was based on the plaintiff's age, race, gender, or
religion.  As a condition of her settlement, the plaintiff was
suspended without pay for five days, forfeited fifteen days of
annual leave accruals, and is subject to a twenty day
disciplinary suspension without pay that will be held in
abeyance for eighteen months.  (See Jenkins Dep. Def. Ex. H.)
Although the plaintiff signed this settlement agreement, and was

represented at the settlement hearing by a union representative, she now contests the terms of the settlement as unfair and says she was under duress. (See Jenkins Dep. 69-70.)   However, there is no evidence of any duress, other than the plaintiff's own beliefs that she "was a target." (Jenkins Dep. 70.)

The plaintiff also alleges that she was subjected to unequal terms and conditions of her employment based on her age, gender, race, and religion. (See Compl. ¶ 2(D).) However, the plaintiff fails to provide anything other than conclusory statements for this belief. For example, when asked what the basis is for her belief that she was being discriminated against based on her religion, the plaintiff responds "because [her supervisor] is a Muslim . . . [so] he didn't really care for me because I was not a Muslim." (See Jenkins Dep. 57.)   However, the plaintiff concedes that she was never denied a religious holiday, she was never told that she could not take a religious day off, and there was nothing that ever happened because she was a Christian. (See Jenkins Dep. 58.)   Furthermore, although Mr. Ibraheem is a non-practicing Muslim, he denies that he has ever treated the plaintiff in a discriminatory manner based on her religious beliefs, or her age, gender, or race. (See Ibraheem Aff. ¶ 26.)   There is no evidence to support the plaintiff's contrary, conclusory, allegation.

21

The plaintiff argues that she was discriminated against
based on her age because her supervisor was younger than she is
and was hired to replace her.  (See Jenkins Dep. 46-47.)
However, the plaintiff has never applied for Mr. Ibraheem's
position, a Grade 14 Clerk, nor has she taken any test to
qualify for that position.   Therefore, she was not denied that
position in favor of a younger employee.  (See Jenkins Dep. 46-
47.)  Furthermore, Mr. Ibraheem was not hired to replace the
plaintiff, but to replace the plaintiff's previous supervisor
who had retired.  (See Sullivan Aff. ¶ 3.)

The plaintiff also argues that she was discriminated
against when her supervisor hired younger employees.  (See
Jenkins Dep. 47.)  The plaintiff points to the hiring of Nicole
Evans in particular as direct evidence of discrimination. (See
Jenkins Dep. 38-39.)  However, the defendant argues that Ms.
Evans was not hired to replace the plaintiff, but was hired to
fill a vacant Clerk 1 position that it could previously not fill
due to a budget freeze.  (See Sullivan Aff. ¶ 4.)  Furthermore,
in the last two years, the defendant has filled twelve
administrative support positions, including Clerk 1 positions,
in its New York City offices, only five of which were filled by
individuals under age 40.  (See Sullivan Aff. ¶ 5.)

The plaintiff argues that she was discriminated against
based on her age when she was no longer assigned certain duties,

such as filling out the certified mail receipts and delivering
the certified mail. (See Jenkins Dep. 39, 41.) She contends
that she asked her supervisor for training on the computerized
system for certified mail but he refused. (See Jenkins Dep.
40.) However, Mr. Ibraheem swears that when he offered to train
the plaintiff she insisted she was too busy and refused to use
the computerized certified mail systems, choosing to manually
prepare the certified mail receipts manually. (See Ibraheem
Aff. ¶¶ 11-12.) As a result, the Office Services Division had
to maintain two file systems for the certified mail, making the
retrieval of this mail difficult. (See Ibraheem Aff. ¶ 13.)
Mr. Ibraheem swears that he gave Ms. Evans the task of preparing
the certified mail receipts so that he could eliminate the
manual system, making it easier for the rest of the staff to
retrieve certified mail from the system. (See Ibraheem Aff. ¶
19.)

     Additionally, Mr. Ibraheem offers a legitimate,
nondiscriminatory reason for advising the plaintiff not to
deliver the certified mail to the post office. On numerous
occasions, the plaintiff left her workstation to bring certified
mail to the post office in violation of staff memorandums and
direct orders from Mr. Ibraheem. (See Ibraheem Aff. ¶ 21; Rulon
Aff. Ex. A, Jan. 26, 2006.) As a result, he concluded that it

would be best if the plaintiff was not directed to deliver the certified mail to the post office.   (See Ibraheem Aff. ¶ 22.)

The plaintiff's suspicions of discrimination in the absence of any supporting evidence cannot defeat a motion for summary judgment. See Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999) (finding that plaintiff's feelings and perceptions that she was being discriminated against were not evidence of discrimination); Garvin v. Potter, 367 F. Supp. 2d 548, 566 (S.D.N.Y. 2005) (dismissing claim where plaintiff failed to provide evidence that discrimination was motivating factor in defendant's action against plaintiff); see also Kalsi v. New York City Transit Auth., 62 F. Supp. 2d 745, 753-54 (E.D.N.Y. 1998) (dismissing action where plaintiff provided no evidence suggesting termination motivated by discriminatory animus).

The circumstances of the plaintiff's $150 assessment, administrative leave, and NODs do not raise any inference of discrimination.  The plaintiff simply makes conclusory statements that everything disadvantageous happened to her because of her race, age, gender, and religion but fails to point to any direct evidence of discrimination, or even any circumstantial evidence of discrimination.  A plaintiff can successfully resist a motion for summary judgment by submitting the plaintiff's own affidavit about what the defendant allegedly

said or did.  However, an affidavit that is conclusory or not
based on the plaintiff's personal knowledge, is insufficient to
defend against a motion for summary judgment.  See Danzer v.
Norden Systems, Inc., 151 F.3d 50, 57 n.5 (2d Cir. 1998) (citing
Attorney General v. Irish Northern Aid Comm., 668 F.2d 159, 162
(2d Cir. 1982)).

     The defendant has presented a legitimate, non-
discriminatory reason for each adverse employment action and the
plaintiff has failed to meet her burden of showing that the
reasons were pretextual.  Therefore, the plaintiff's claims
should be dismissed on summary judgment.

                              2.

     The defendant also contends that the Eleventh Amendment to
the United States Constitution bars the plaintiff's ADEA claims,
and the plaintiff has failed to respond to this argument.  This
is an independent reason for dismissing the plaintiff's ADEA
claims.

     Absent a waiver on the part of the state or a valid
congressional override, under the Eleventh Amendment to the
United States Constitution, private individuals may not sue
nonconsenting states in federal court.  See Kimel v. Florida Bd.
of Regents, 528 U.S. 62, 80 (2000); Seminole Tribe of Florida v.
Florida, 517 U.S. 44, 73 (1996).  This immunity extends to state
agencies, which are thus immune from federal suits brought by

citizens, absent state consent to such a suit or an express statutory waiver of immunity.  <u>Howlett By & Through Howlett v. Rose</u>, 496 U.S. 356, 365 (1990).

In <u>Kimel</u>, the Supreme Court held that the ADEA does not abrogate the states' sovereign immunity.  <u>See</u> <u>Kimel</u>, 528 U.S. at 91.  Because New York has not waived its sovereign immunity, the plaintiff's federal ADEA claims are barred and must be dismissed.  <u>See</u> <u>McGinty v. New York</u>, 251 F.3d 84, 94 (2d Cir. 2001) (dismissing plaintiff's ADEA claims because New York State has not waived its sovereign immunity).

Although the plaintiff's age discrimination claims brought pursuant to state law are not barred by the Eleventh Amendment, for the reasons explained above, the plaintiff has failed to present sufficient evidence from which a reasonable jury could find that she was discriminated against because of her age. Accordingly, the plaintiff's age discrimination claims should be dismissed.

B.

The defendant also seeks summary judgment dismissing the plaintiff's retaliation claim. The plaintiff alleges that the defendant retaliated against her after she filed her first complaint with the SDHR by giving her an NOD and seeking her termination. (<u>See</u> Compl. § 2(A).)  To establish a prima facie case of retaliation, the plaintiff must demonstrate that (1) the

26

plaintiff was engaged in a protected activity; (2) the defendant was aware of this activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action, that is, that a retaliatory motive played a part in the adverse employment action.  See Hawana v. City of New York, 230 F. Supp. 2d 518, 529 (S.D.N.Y. 2002)(citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993).

The plaintiff has satisfied the first three elements of the prima facie showing: (1) she engaged in the protected activity of opposing an unlawful employment practice; (2) the defendants were aware of this activity; and (3) the plaintiff received an NOD seeking her termination, thus suffering an adverse employment action. The plaintiff has not, however, put forth any evidence that she received this NOD in retaliation for her complaints. As a result the plaintiff failed to demonstrate the necessary causal link between her protected behavior and the alleged retaliation.

The plaintiff was placed on administrative leave on October 12, 2005, immediately after her insubordination regarding the certified mail.  She filed her first complaint with the NYSDHR on November 22, 2005, after she had already been placed on administrative leave.  (See Pl. Verified Compl. No. 10108950; Jenkins Dep. Ex. C.)  The NOD for termination was issued on

27

February 20, 2006 as a result of the plaintiff's actions giving rise to her administrative leave.  Even the plaintiff concedes that she received the NOD for termination as a direct response to the October 12, 2005 incident. (See Jenkins Dep. 186-88.) Thus, the NOD for termination was a response to an incident of insubordination pre-dating the plaintiff's initial complaint, supporting the defendant's non-pretextual reasons for such action.  Moreover, the plaintiff was placed on administrative leave prior to her first complaint to the NYSDHR.  When disciplinary action begins prior to the protected activity, there is no inference of retaliation simply because the adverse action is completed after the protected activity.  See, e.g., Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001).

The plaintiff also alleges that she received unsatisfactory performance evaluations in retaliation for her first SDHR complaint, filed November 22, 2005.  However, the plaintiff's first unsatisfactory performance evaluation was given to her in March 2005, pre-dating her first complaint, a fact that she admits. (See Jenkins Dep. 206.)  Moreover, the defendant provided a non-discriminatory reason for the second unsatisfactory performance evaluation.  This evaluation was given after the plaintiff had engaged in insubordination and misconduct by refusing to follow directives from her superior

officers, resulting in her administrative leave on October 12, 2005.  The plaintiff has not rebutted these facts with any evidence of retaliation, other than to respond "[e]verything is retaliation."  (Jenkins Dep. 208.)

The plaintiff's final accusation of retaliation was that she was transferred to the Mortgage Banking Division after returning from administrative leave.  The plaintiff alleges that the defendant "wanted her to sit [in mortgage banking] so they could fire [her] from there."  However, it has been almost three years since the plaintiff was transferred to the mortgage banking department and she has not been terminated.  Additionally, the defendant informed the plaintiff in a letter dated May 17, 2006 that it was transferring her only because of operational needs, needs that were expressed prior to the plaintiff's reassignment.  (See Aff. of Rholda Rickets annexed to Martin Dec., Ex. 5, ¶ 3.)  The plaintiff's claim that her assignment to mortgage banking was an act of retaliation is not supported by any evidence.

The plaintiff has failed to present sufficient evidence from which a reasonable jury could find that any adverse action was taken against her in retaliation for her claims to the SDHR.  See, e.g., Saenger v. Montefiore Med. Ctr., No. 07 Civ. 488, 2010 WL 1529400, at *21 (S.D.N.Y. Mar. 31, 2010) (granting summary judgment dismissing retaliation claim for failure to

show causation when adverse employment action was based on plaintiff's disciplinary record).   Therefore, the plaintiff's claims of retaliation should be dismissed.

                              C.

     The plaintiff also alleges that the defendant discriminated against her when it failed to promote her from her position of Clerk 1, Grade 6 at any time throughout her employment.  (See Compl. ¶ 2(A).)[3]

     In order to establish a prima facie case of discrimination for failure to promote, the plaintiff must allege that: "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she applied for and was denied promotion to a position for which she was qualified; and (4) the position remained open and the employer continued to seek applicants." Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 (2d Cir. 2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

     Significantly, the plaintiff has not alleged that she has ever applied for a promotion, or that she was qualified for such a promotion.   Instead, the plaintiff acknowledges that although

_____

[3] In order for this Court to hear the plaintiff's failure to promote claims brought under Title VII or the ADEA, the plaintiff must first have exhausted her administrative remedies by filing a complaint with the EEOC or a local administrative agency.  See Shah v. New York State Dep't of Civil Service, 168 F.3d 610, 613 (2d Cir. 1999).  Although the defendant argues that the plaintiff failed to exhaust these administrative remedies, it is unnecessary to make such a determination because the alleged failure to promote claim is without merit whether brought under federal law or state law.

she has taken at least one Civil Service examination, she has
not passed the examination, thus failing to meet the minimum
eligibility requirements for any promotion.  When she discussed
her desire to upgrade from Clerk 6 with her supervisor, he told
her that before she could be considered, she must pass the Civil
Service Examination.

The plaintiff argues that her inability to pass the
examination is an excuse, and that if her supervisor wanted to
promote her he could have done so himself.  She argues that her
supervisor used the opportunity to promote newer and younger
workers and discriminated against the plaintiff because of her
age.  However, such conclusory statements, without any evidence
to support them, are insufficient to establish a prima facie
case of failure to promote. See Patterson v. County of Oneida,
375 F.3d 206, 221 (2d Cir. 2004)("[I]f the plaintiff has failed
to show that there is evidence that would permit a rational
factfinder to infer that the employer's proffered rationale is
pretext, summary judgment dismissing the claim is
appropriate."); Bickerstaff v. Vassar Coll., 196 F.3d 435, 456
(2d Cir. 1999)(affirming summary judgment dismissing plaintiff's
discrimination claims because plaintiff provided no evidence
that illegal discriminatory motive played motivating role in
decision to deny plaintiff's promotion, and evidence
overwhelmingly supported defendant's explanation of legitimate,

nondiscriminatory reason); Smith v. Am. Express Co., 853 F.2d
151, 154-55 (2d Cir. 1988) (affirming summary judgment because
of plaintiff's failure to present more than conclusory
allegations that employer's proffered nondiscriminatory
rationale for denial of promotion was pretext).

Therefore, the plaintiff's failure to promote claims should
be dismissed because the plaintiff has failed to present
evidence that she applied for and was denied promotion to a
position for which she was qualified.

CONCLUSION

For the reasons explained above, the defendant's motion for
summary judgment dismissing the plaintiff's claims is **granted**
and the claims are dismissed. The Clerk of the Court is directed
to enter judgment dismissing the complaints in 07 Civ. 6322 and
07 Civ. 11317, and closing those cases.  The Clerk is also
directed to close any open motions.

**SO ORDERED.**

Dated:     New York, New York
           September 30, 2010

John G. Koeltl
United States District Judge

32